UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

1-10-12

JAN 1 0 2012

Magistrate Judge Sidney I. Schenkier
United States District Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 11 CR 897 |
| v. | ) | |
| | ) | Presiding Magistrate Juge |
| ATLAS FIBRE COMPANY | ) | Sidney I. Schenkier |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant ATLAS FIBRE COMPANY, and defendant's attorney, SCOTT R. LASSAR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The information in this case charges defendant with trading in specimens of African elephant ivory contrary to the provisions of the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), in violation of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1538(c)(1) and 1540(b)(1).

3.    Defendant has read the charge against it contained in the information, and that charge has been fully explained to defendant by its attorney.

4.    Defendant fully understands the nature and elements of the crime with which defendant has been charged.

## Charges to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with trading in specimens of African elephant ivory contrary to the provisions of CITES, in violation of the ESA, 16 U.S.C. §§ 1538(c)(1) and 1540(b)(1).

## Factual Basis

6.     Defendant will plead guilty because defendant is in fact guilty of the charge contained in the information.  In pleading guilty, defendant admits the following facts and that those facts establish its guilt beyond a reasonable doubt:

On or about October 13, 2006, at Skokie, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant ATLAS FIBRE COMPANY knowingly and without permission to do so as required by law engaged in the trade of specimens, namely, approximately 61 pieces of worked African elephant ivory (*Loxodonta africana*), which specimens were traded contrary to the provisions of CITES, in violation of Title 16, United States Code, Sections 1538(c)(1) and 1540(b)(1).

In particular, defendant was an Illinois for-profit corporation located in Skokie, Illinois, whose primary business consisted of manufacturing and distributing fiber, plastic and other materials for industrial applications.  ATLAS had a division called Atlas Billiard Supplies that was involved in the interstate and international sale of billiard parts, particularly parts involved in the fabrication of billiard cue sticks.  Among the items that Atlas Billiard Supplies sold to its customers were products manufactured from wildlife. The wildlife products that ATLAS sold through its Atlas Billiard Supplies division included

-2-

African elephant ivory, as well as shell products (mother of pearl and abalone) and leathers made from the hides of various wildlife species (African elephant, monitor lizard, kangaroo, ostrich and shark).

The trade in specimens of African elephant (*Loxodonta africana*) was restricted by CITES, an international agreement aimed at protecting wildlife species at risk of becoming extinct due to commercial trade. Prior to and including 2006, the African elephant was listed under Appendix II of CITES because it had been identified as a species that could become threatened with extinction if trade in its specimens was not subjected to strict regulation. The United States has been a party to CITES since it went into effect in 1975. Under CITES, the export of all Appendix II species, including African elephants and parts thereof (including ivory and elephant leather), from a member nation was prohibited unless the exporter obtained an export permit from the country of export, which in this case was the United States. Pursuant to the ESA, CITES "export permits" were issued by the United States Fish and Wildlife Service pursuant to its regulations at 50 C.F.R. Part 23.

On or about October 13, 2006, ATLAS (through its Atlas Billiard Supplies division) engaged in the commercial trade of specimens of African elephant ivory by exporting from the United States to Japan approximately 61 pieces of worked African elephant ivory that Atlas Billiard Supplies had sold to Japanese Customer A. The total retail value of the African elephant ivory was approximately $3,057. At the time that it sold and exported the African elephant ivory to Japan, ATLAS did not possess a CITES export permit from the Fish and Wildlife Service as required by CITES. ATLAS was aware that it did not have a CITES export permit at the time it sold and exported the African elephant ivory to Japan. In the invoice that ATLAS placed with the shipment, ATLAS intentionally removed any

-3-

references to "ivory" in order to help the shipment move through Japanese customs without being identified as ivory.

ATLAS also failed to obtain a mandatory $50 import/export license and to pay a mandatory $55 inspection fee for the shipment of elephant ivory, thereby causing the Fish and Wildlife Service to lose revenue of $105 based upon this shipment.

7.    Defendant also acknowledges that for the purpose of computing its sentence under the Sentencing Guidelines, the following conduct, to which defendant stipulates, constitutes relevant conduct under Guideline §1B1.3:

Beginning no later than January 2002 and continuing up to and including 2009, ATLAS, through its Atlas Billiard Supplies subsidiary, engaged in the commercial trade of wildlife specimens in violation of Fish and Wildlife Service regulations, including the export of African elephant (Loxodonta africana) and monitor lizard (Varanus sp.), both of which were CITES Appendix II species, without obtaining a CITES export permit.  Further, also in violation of the ESA, ATLAS knowingly failed (a) annually to obtain a Fish and Wildlife Service import/export license; and (b) for each export of wildlife, to submit to the Fish and Wildlife Service an export declaration (Form 3-177) providing required information about wildlife contained in the shipment.

In particular, ATLAS exported from the United States African elephant ivory products on approximately 129 separate occasions between January 7, 2002, and November 7, 2006.  These exports were made primarily to Japan and Germany.  On none of these occasions did ATLAS obtain a CITES export permit or file a Form 3-177 with the Fish and Wildlife Service.  The total value of the ivory for all of these shipments was in excess of approximately $93,000.  For various ivory shipments made to Japan, ATLAS, at the

-4-

request of two of its customers, intentionally removed any references to "ivory" in the invoices that accompanied the shipment in order to help the shipment move through Japanese customs without being identified as ivory.

In addition, ATLAS also exported from the United States monitor lizard leather and African elephant leather on approximately 53 occasions between September 2005 and October 2009. On none of these occasions did ATLAS obtain a CITES export permit or file a Form 3-177 with the Fish and Wildlife Service. The total value of the monitor lizard and elephant leather for these shipments was in excess of approximately $11,701.

Further, ATLAS also exported from the United States other wildlife, including shell products (mother of pearl and abalone) and leathers made from the hides of various wildlife species (kangaroo, ostrich and shark) on approximately 37 occasions between January 2005 and October 2009. On none of these occasions did ATLAS file a Form 3-177 with the Fish and Wildlife Service. The total value of these wildlife products was in excess of approximately $3,799.

At no time up to and including 2009 has ATLAS maintained a valid import/export license as required by the ESA, nor has ATLAS paid mandatory Fish and Wildlife inspection fees. In sum, ATLAS failure to obtain the necessary import/export licenses and to pay the required inspection fees deprived the Fish and Wildlife Service of approximately $12,273 in revenue.

During the course of a Fish and Wildlife Service investigation into ATLAS' illegal wildlife shipments, the Fish and Wildlife Service expended approximately $1,428 in official funds to purchase wildlife products that were illegally shipped by ATLAS.

**Maximum Statutory Penalties**

8.      Defendant understands that the charges to which defendant is pleading guilty carry the following statutory penalties:

a.      A maximum term of one year of probation. This offense also carries a maximum fine of $200,000.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $125 on the charge to which it has pled guilty, in addition to any other penalty or restitution imposed.

**Sentencing Guidelines Calculations**

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2011 Guidelines Manual.

b.      **Fine Amount Calculations.**  Pursuant to Guideline §§ 8C2.1 and 8C2.10, the amount of the fine to be imposed is to be based upon the factors set forth at Title 18, United States Code, Sections 3553 and 3572.

c.      Defendant and its attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely.  Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case.  Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation.  Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw its plea on the basis of the Court's rejection of these calculations.

d.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing.  The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines.  The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw its plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.     Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the Court shall impose a sentence of one year of probation and order defendant to pay a fine of $150,000 at the time of sentencing.  Other than the agreed term of probation and the amount of the fine, the parties agree that the Court remains free to impose the sentence it deems appropriate.  The parties will also jointly recommend that such fine should be ordered to be deposited into the Lacey Act Reward Account.  In order to ensure deposit of the $150,000 fine into the Lacey Act Reward Account, the parties will further jointly recommend to the Court that the judgment expressly direct that (a) ATLAS shall pay the fine to the United States District Court Clerk for disbursement to the Lacey Act Reward Account; (b) upon receipt of the complete fine payment from ATLAS, the United States District Court Clerk shall disburse the entire fine amount in the form of a United States Treasury check that is made payable to the United States Fish and Wildlife Service and states that the funds are to be deposited into the Lacey Act Reward Account; and (c) the United States District Court Clerk shall transmit the United States Treasury check directly to the following address:

> United States Fish and Wildlife Service
> Division of Financial Management / Denver Operations
> Cost Accounting
> P.O. Box 272065
> Denver, Colorado  80227
> Fund - 122X
> Organizational Code -99000

12.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the United States Fish and Wildlife Service is $105, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code,

§ 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

13.     Defendant also agrees to pay additional restitution, arising from the relevant conduct set forth above, totaling $12,168 to the United States Fish and Wildlife Service, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

14.     Restitution shall be due immediately. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), defendant is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect defendant's ability to pay restitution.

15.     The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of probation imposed in this case, a requirement that defendant repay the United States $1,428 as compensation for government funds that defendant received during the investigation of the case.

16.     Defendant agrees to pay the special assessment of $125 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     Defendant acknowledges that its Board of Directors met on December 22, 2011, and, on that date, passed a corporate resolution authorizing Scott R. Lassar of Sidley Austin, L.L.P., to enter into this plea agreement on behalf of defendant. A copy of that resolution is attached to, and incorporated as part of, this plea agreement.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 11 CR 897.

19.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20.     Defendant understands that by pleading guilty it surrenders certain rights, including the following:

a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against it, and if it did, it would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

-10-

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and its attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict defendant unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and defendant's attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in its own behalf. If the witnesses for defendant would not appear voluntarily, defendant could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

-11-

b.    **Appellate rights.** Defendant further understands it is waiving all appellate issues that might have been available if defendant had exercised its right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

c.    Defendant understands that by pleading guilty it is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to defendant, and the consequences of defendant's waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

21.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against defendant, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

22.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of defendant's financial circumstances, including defendant's recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be prosecuted as a

-12-

violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

23.     For the purpose of monitoring defendant's compliance with its obligations to pay a fine and restitution during any term of probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's corporate income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

25.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26.     Defendant understands that its compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event defendant violates this Agreement, the government, at its option, may move to

-13-

vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

28.     Defendant and its attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29.    Defendant acknowledges that it has read this Plea Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that defendant understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___January 10, 2012___

_____
PATRICK J. FITZGERALD
United States Attorney

_____
Authorized Representative of
ATLAS FIBRE COMPANY
Defendant

_____
TIMOTHY J. CHAPMAN
Assistant U.S. Attorney

_____
SCOTT R. LASSAR
Attorney for Defendant

-15-

**RESOLUTIONS ADOPTED BY UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS
OF ATLAS FIBRE COMPANY**

**DECEMBER 22, 2011**

The undersigned are all of the Members of the Board of Directors of Atlas Fibre Company, an Illinois corporation (the "*Corporation*"). In accordance with Section 8.45 of the Business Corporation Act of the State of Illinois, the undersigned do hereby adopt the following resolutions by unanimous written consent as if adopted at a duly convened special meeting of the Board of Directors, on December 22, 2011.

RESOLVED, that this Corporation accepts and agrees to enter into a certain Plea Agreement (the "Agreement") in accordance with the terms and provisions of the copy of the Agreement attached hereto and made part hereof;

FURTHER RESOLVED, that Richard Welch, Vice President of this Corporation, be and is hereby authorized and directed to sign the Agreement on behalf of the Corporation; and Scott R. Lassar, and any other attorney from the firm of Sidley and Austin designated by Mr. Lassar, be and is hereby authorized and directed to enter a guilty plea on behalf of this Corporation consistent with the provisions of the Agreement.

\* \* \* \* \*

Dated: December 22, 2011


_____
Mark L. Grusin, Director


_____
Richard Welch, Director

1072494.1